UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No: 23-cv-80657-Middlebrooks/Matthewman

JERMAINE SMITH,

      Petitioner,

v.

SECRETARY, DEPARTMENT OF
CORRECTIONS, STATE OF FLORIDA,

      Respondent

_____/

FILED BY _____ SW _____ D.C.

Aug 20, 2024

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PETITIONER'S PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY [DE 7]

**THIS CAUSE** is before the Undersigned upon Petitioner, Jermaine Smith's ("Petitioner") Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Petition") [DE 7].[1] The matter was referred to the Undersigned United States Magistrate Judge by the Honorable Donald M. Middlebrooks, United States District Judge. *See* DE 5. Respondent, Secretary, Florida Department of Corrections ("the State"), has filed a response to the Petition [DE 12], appendices [DEs 13 and 14], and several transcripts [DE 15]. Petitioner has filed a reply [DE 18]. The Undersigned held an evidentiary hearing on the Petition on August 16, 2024. *See* DE 38. Thus, the matter is ripe for review. The Undersigned has reviewed and carefully considered the Petition, the response, the reply, the appendices and exhibits, the transcripts, the testimony at the August 16, 2024 evidentiary hearing, and all pertinent portions of the underlying criminal file.

---

[1] The Petition was amended, although not titled as such.

# I.   **BACKGROUND**

This case originated in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida (case number 50-2017-CF-005182-MB). [DE 13-1 at 5]. Petitioner was charged with Robbery with a Deadly Weapon and proceeded to trial on that charge. [DE 13-1 at 15, 18–19]. Following a jury trial, on September 27, 2018, the jury found Petitioner guilty of the lesser included offense of Robbery with a Weapon, finding that, in the course of committing the offense, Petitioner did not carry a deadly weapon.[2] [DE 13-1 at 17]. Thus, that same day, on September 27, 2018, Petitioner was adjudicated guilty of Robbery with a Weapon. [DE 13-1 at 20]. And on December 7, 2018, the trial court sentenced Petitioner to fifteen (15) years in the Department of Corrections, with 74 days of credit for time served. [DE 13-1 at 24–25].

Petitioner appealed his Judgment and Sentence, and the Fourth District Court of Appeal *per curiam* affirmed his conviction and sentence. *See* DE 13-1 at 117. Several years later, on March 10, 2021, Petitioner filed an Amended Motion for Post-Conviction Relief,[3] arguing that he was deprived of his right to the effective assistance of counsel based on trial counsel's failure to advise him that he would likely be found guilty due to the overwhelming nature of the evidence against him, and trial counsel's failure to advise him that acceptance of the State's plea deal was in his best interest. [DE 13-1 at 120–35].

Subsequently, on March 24, 2022, the trial court entered an Order Denying [Petitioner's] Amended Motion for Postconviction Relief. [DE 13-1 at 141–46]. Specifically, in response to

---

[2] Petitioner was convicted of Robbery with a Weapon, and not Robbery with a *Deadly* Weapon. This was because the jury made specific findings that, while Petitioner did *not* carry a deadly weapon, Petitioner *did* carry a weapon. [DE 13-1 at 17–18].

[3] Petitioner initially filed a Motion for Post-Conviction Relief [DE 13-1 at 119] on February 8, 2021, which he quickly amended.

Defendant's argument "that the knowledge of the surveillance video at trial, in conjunction with the DNA evidence, would have changed his decision concerning the plea offer[,]" the trial court found that the record conclusively refuted Petitioner's purported lack of knowledge of the surveillance video, as "the State mentioned the video during the discussion of the plea offer and colloquy with" Petitioner. [DE 13-1 at 143]. Moreover, during discussion of the plea offer and the colloquy with Petitioner, Petitioner "was present in the courtroom and, subsequent to the State mentioning its intention to utilize the surveillance footage and DNA evidence, [Petitioner] rejected the plea offer in open court." [DE 13-1 at 144]. And, as to the overwhelming nature of the evidence against Petitioner, the trial court noted that the State "introduced photographs depicting scenes captured from the video and the witnesses at trial could not identify [Petitioner] based on the surveillance video but rather only acknowledged the similarities between [Petitioner] and the individual in the video." [DE 13-1 at 144]. Thus, the trial court found that Petitioner failed to prove prejudice under *Strickland v. Washington,* 466 U.S. 668 (1984). [DE 13-1 at 144].

The trial court also found that "[t]he record conclusively refute[d Petitioner's] claim that [Petitioner] would have accepted the [plea] offer if properly advised[,]" as "[t]he State and Defense, as officers of the Court, both represented at the beginning of the plea colloquy that [Petitioner] wanted probation or house arrest." [DE 13-1 at 145]. Moreover, "[a]fter discussing the surveillance video, DNA evidence, use of a hammer to break the glass, charges against [Petitioner], and approximate value of the property stolen, [Petitioner] rejected the plea offer of five (5) years on the record." [DE 13-1 at 145]. Indeed, Petitioner "independently confirmed that he understood his options, had spoken with defense counsel, and rejected the option of a plea offer in deciding to proceed to trial instead." [DE 13-1 at 145–46].

Petitioner appealed the trial court's denial of his amended motion for postconviction relief. [DE 13-1 at 147]. The Fourth District Court *per curiam* affirmed the denial of his amended motion for postconviction relief, with Judge Warner including a written dissent. [DE 13-1 at 204]. Specifically, Judge Warner stated:

> I dissent from the affirmance of the trial court's order summarily denying appellant's motion for postconviction relief. In the motion, appellant claimed ineffective assistance of counsel in failing to apprise him of the overwhelming strength of the State's case before he rejected a favorable plea offer. Because the record does not conclusively refute his allegations, I would reverse for an evidentiary hearing on the issue.

[DE 13-1 at 204].

Thereafter, Petitioner filed a Motion for Rehearing, Request that the Court Enter a Written Opinion, and/or Request for Clarification [DE 13-1 at 205–211], which the Fourth DCA also denied. [DE 13-1 at 212]. Notably, in the Fourth DCA's denial of the motion, Judge Warner again dissented and wrote that she would have granted rehearing. [DE 13-1 at 212].

## II.   PETITION, RESPONSE, AND REPLY

### A.  Petition & Memorandum [DEs 7, 3]

In the Petition [DE 7] and corresponding Memorandum [DE 3], Petitioner seeks federal habeas relief, arguing that he was "deprived of his right to the effective assistance of counsel by his trial counsel's failure to adequately advise him with respect to the state's plea offer of 5 years['] imprisonment" and that he therefore is "entitled to have his state court Judgment and Sentence vacated." [DE 3 at 5].

Specifically, Petitioner argues that his trial counsel performed deficiently. *Id.* In this regard, while Petitioner acknowledges that "[h]ow to define the duties and responsibilities of defense counsel in the plea bargaining process, for purposes of *Strickland's* deficient performance prong,

4

has not been outlined by the United States Supreme Court," Petitioner contends the fact that "the right to effective assistance of counsel encompasses the accused's right to be informed by his attorney as to the relative merits of pleading guilty and proceeding to trial, is hardly novel, having been articulated by the Supreme Court nearly a half-century ago" in *Von Moltke v. Gillies*, 332 U.S. 708, 721 (1948). *Id.* (alterations and citation omitted). And on this matter, Petitioner maintains that:

> Here, in his state court proceedings [Petitioner] argued he was deprived of his right to the effective assistance of counsel by his trial counsel's failure to discuss with [Petitioner] the fact a surveillance video from Value Pawn portraying a man who looked strikingly similar to [Petitioner] smashing the glass case and cutting himself would be played at trial. Instead, Mr. Walsh simply advised [Petitioner] that five (5) years imprisonment was too much, that they could obtain a better offer, and, failing that, they had a solid chance of winning at trial as he could explain away the DNA evidence. However, had [Petitioner] been properly advised that a surveillance video from Value Pawn portraying a man who looked strikingly similar to him smashing the glass case and cutting himself would be played at trial, [Petitioner] would have accepted the state's offer of five (5) years imprisonment. Furthermore, had [Petitioner] been properly advised that due to the overwhelming nature of the evidence against him he would likely be found guilty, and that in all likelihood he would be sentenced to greater than five (5) years imprisonment, [Petitioner] would have accepted the state's offer of five (5) years imprisonment.

*Id.* at 6.

According to Petitioner, the state court's finding that the record conclusively refuted this argument "is contrary to and/or constitutes an unreasonable application of clearly established federal law[.]" *Id.* Indeed, Petitioner "acknowledges the record is clear that the State informed [him] of the evidence against him" but argues that "[w]hat is not in the record is whether trial counsel allowed [him] to view the evidence against him or discussed the evidence against him, and what it meant to his chances of success at trial[,]" as well as "trial counsel's advice regarding the evidence." *Id.*

In fact, Petitioner argues that he stated under oath that trial counsel "did not discuss with him the fact a surveillance video from Value Pawn portraying a man who looked strikingly similar to [Petitioner] smashing the glass case and cutting himself would be played at trial" and also stated under oath that "Mr. Walsh simply advised him that five (5) years imprisonment was too much, that they could obtain a better offer, and, failing that, they had a solid chance of winning at trial as he could explain away the DNA evidence." *Id.* at 7. Moreover, Petitioner notes that he stated under oath that "had he been properly advised that a surveillance video from Value Pawn portraying a man who looked strikingly similar to him smashing the glass case and cutting himself would be played at trial, he would have accepted the state's offer of five (5) years imprisonment" and that "had he been properly advised that due to the overwhelming nature of the evidence against him he would likely be found guilty, and . . . in all likelihood he would be sentenced to greater than five (5) years imprisonment, he would have accepted the state's offer of five (5) years imprisonment." *Id.* Petitioner asserts that these attestations must be accepted by the Court as true. *Id.*

Petitioner maintains it was unreasonable for trial counsel to advise him that five (5) years' imprisonment was too much and that they could win at trial, and that trial counsel "performed deficiently by failing to advise him that the state's evidence would ensure he would lose at trial, and, therefore, [that] acceptance of the state's plea offer of five (5) years imprisonment was in his best interest." *Id.* at 7–8. More specifically, Petitioner argues that his "trial counsel was required to offer him his informed advice regarding the state's evidence prior to advising [Petitioner] to reject the state's offer, and [that] no reasonable attorney would have failed to advise [Petitioner] that in light of the overwhelming nature of the state's case against him, and [the] grave consequences he faced by rejecting the offer, that acceptance of the offer was in his best interest[.]"

*Id.* at 8. Petitioner thus argues that "trial counsel performed deficiently within the meaning of *Strickland* regardless of whether [Petitioner] knew of the evidence against him." *Id.* at 8.

Next, Petitioner contends that he was overwhelmingly prejudiced by his trial counsel's deficient performance. *Id.* According to Petitioner, he has "met the prejudice prong of *Strickland*, as the record demonstrates that he would have accepted the state's offer of 5 years imprisonment had he been properly advised in connection with the state's plea offer[.]" *Id.* And because his burden is merely "to demonstrate a probability sufficient to undermine this Court's confidence in the outcome of his plea negotiations[,] . . . because this Court cannot say with confidence that the outcome of [Petitioner's] plea negotiations would have remained the same had trial counsel advised [Petitioner] of the overwhelming nature of the evidence against him, and that acceptance of the state's plea offer was in his best interest, [Petitioner] has demonstrated prejudice within the meaning of *Strickland*." *Id.* at 9. Indeed, Petitioner also notes that his sentence "would have been less severe under the plea offer – 5 years imprisonment – than under the judgment and sentence – 15 years imprisonment – that was entered." *Id.*

Accordingly, Petitioner maintains "[i]n order to restore [Petitioner] to the circumstances that would have existed had there been no constitutional error, this Court should order the Circuit Court in and for Palm Beach County, Florida, to vacate [Petitioner's] Judgment and Sentence, and direct the circuit court to enter a new Judgment and Sentence reflecting a 5 year term of imprisonment, or, in the alternative, order the circuit court to vacate [Petitioner's] Judgment and Sentence, and direct the state to resume good faith plea negotiations with him." *Id.* at 10. At the very least, Petitioner argues he is entitled to an evidentiary hearing. *Id.* at 11.

**B.  Response [DE 12]**

After discussing the evidence and the procedural history of the case, the State concedes that the Petition "appears to be timely." [DE 12 at 12]. Moreover, the State concedes that "Petitioner's sole claim in the instant [P]etition appears exhausted because the same claim was raised in the state court in his motion for postconviction relief, resolved on the merits, and appealed."

Thereafter, under *Strickland*, the State first argues that Petitioner's claim is facially insufficient. *Id.* at 21. Specifically, the State notes that Petitioner "perfunctorily asserts that trial court's assessment of the evidence was unreasonable by exaggerating the strength of the State's evidence as 'overwhelming[,]'" as "[i]n Florida, DNA located at the scene of an offense is **not** always conclusive evidence of involvement in a crime." *Id.* And, "**no witness identified Petitioner in the video recording**." *Id.* at 22. Indeed, "the surveillance video had limited probative value in identifying Petitioner in only depicting a person 'similar' to Petitioner." *Id.* at 24.

Because Petitioner's analysis of the evidence as "overwhelming" is exaggerative, the State argues that "Petitioner's assertions ultimately amount to mere conclusory dissatisfaction with trial counsel's assessment, which cannot form the basis of an ineffectiveness claim." *Id.* at 25–26. The State argues it was therefore "entirely reasonable for defense counsel to advise Petitioner to reject the plea based on the strength of the State's evidence and their settled strategy to 'explain away' the DNA evidence." *Id.* at 26.

Next, under *Strickland*, the State argues that Petitioner cannot demonstrate prejudice. *Id.* at 26. This is because "[t]he state court record clearly refutes Petitioner's claim of prejudice, as . . . . a hearing prior to jury selection reveals that Petitioner was given an opportunity to accept the plea

offer of five years while highlighting that the State had blood evidence and a surveillance video[.]" *Id.* at 27. Moreover, "both the State and defense counsel indicated **Petitioner was only interested in probation or house arrest**." *Id.* And, Petitioner maintained that he had a chance to talk with trial counsel and decided to go to trial during his colloquy. *Id.* at 28–29. As summarized by the State:

> Here, not only was Petitioner aware of the offer, counsel advised him not to take it, and when the offer was again discussed on the record, the State and the trial court specifically cited the DNA and video evidence before Petitioner **again** rejected the offer. (H 4, 13-16). The state court record conclusively shows that, at the time, **Petitioner would not accept anything other than probation or house arrest**. (H 13). Petitioner's current claim amounts to nothing more than an after the fact desire to have accepted the plea. See (DE#3 8-9).

> Petitioner's after the fact aspiration that he should have accepted the offer is **insufficient to support a claim of prejudice**. <u>Diaz</u>, 930 F.2d at 835; <u>Cook</u>, 189 Fed. Appx. at 931. This is the epitome of hindsight coloring an ineffectiveness claim. *See Strickland*, 466 U.S. at 689.

*Id.* at 31.

And finally, as to Petitioner's request for an evidentiary hearing, according to the State, "an evidentiary hearing is unwarranted." *Id.* at 32–34.

### C. **Reply [DE 18]**

In reply, Petitioner argues that the State's arguments are "devoid of merit[.]" [DE 18 at 1]. First, Petitioner argues that the State's argument that Petitioner's "blood being inside the smashed jewelry counter along with a surveillance video of a person that looks exactly like him smashing the jewelry counter is not overwhelming evidence is ludicrous." *Id.* at 1–2. To this end, "[c]ommon sense says if a video depicts a person smashing a jewelry counter that looks exactly like the person whose blood is found inside of the smashed jewelry counter then that person that left the blood is the one who smashed the counter, and took the jewelry." *Id.* at 2. And, "[a]s no reasonable attorney

would have failed to advise [Petitioner] that in light of the overwhelming evidence against him acceptance of the state's offer of five (5) years imprisonment was in his best interest trial counsel performed deficiently within the meaning of *Strickland*." *Id.* But even assuming the evidence was only "compelling," Petitioner asserts no reasonable attorney would have failed to advise Petitioner of the "compelling" evidence against him. *Id.*

Second, Petitioner argues that the fact he was aware of the blood evidence and surveillance video proves nothing, as "there is nothing in the record demonstrating [Petitioner] knew the blood would be linked to him, and there is no evidence [Petitioner] reviewed the surveillance video." *Id.* And, because there was no evidentiary hearing below, "this Court must accept [Petitioner's] assertion that trial counsel gave no advice as to what the blood evidence and surveillance video meant to his chances at trial." *Id.* This Court "must also accept as fact, [Petitioner's] assertion that had trial counsel made him aware that this evidence would virtually ensure he would be convicted and sentenced to more than five (5) years imprisonment that he would have accepted the state's plea offer of five (5) years imprisonment, that the state would not have withdrawn the offer, that the court would have accepted the offer, and he would be serving less time under the plea agreement than he is currently serving." *Id.* at 2–3. Thus, Petitioner argues he has been "overwhelmingly prejudiced." *Id.* at 3.

Third, Petitioner asserts that the State "relies on off the cuff remarks from the state and defense in an attempt to prove [Petitioner] would not have accepted the state's offer had he been properly advised." *Id.* After noting that the State and defense counsel were not testifying under oath, Petitioner argues that *his* assertion under oath that "had trial counsel properly advised him to

accept the plea offer, he would have accepted the state's offer" is not refuted by the record and must be accepted as fact.

Thus, Petitioner again maintains that, "because the record reflects that [Petitioner] suffered prejudice from his trial counsel's deficient performance, he was deprived of his right to the effective assistance of counsel, and, as such, [Petitioner's] Judgment and Sentence should be vacated, and the circuit court in and for Palm Beach County should be directed to impose a new Judgment and Sentence reflecting a 5 year term of imprisonment." *Id.* at 4. Alternatively, Petitioner argues that "this Court should hold an evidentiary hearing to resolve [Petitioner's] claim as the record is not sufficient to deny [Petitioner's] claim, and [Petitioner] attempted to develop the record in state court but was prevented from doing so through no fault of his own." *Id.*

### III.    PETITIONER'S ENTITLEMENT TO AN EVIDENTIARY HEARING

On July 12, 2024, after having carefully reviewed the Petition and all corresponding documents, the Undersigned entered an Order Setting Evidentiary Hearing [DE 19], finding that an evidentiary hearing was necessary in the case. [DE 19 at 1]. The State then filed a Motion for Reconsideration of Order Granting Evidentiary Hearing [DE 21], which the Undersigned denied. *See* DE 25.

The Undersigned incorporates the Order Denying Motion for Reconsideration of Order Granting Evidentiary Hearing [DE 25] as part of this Report and Recommendation. That Order Denying Reconsideration includes the reasons the Undersigned determined that an evidentiary hearing was necessary in this case. *See* DE 25. Importantly, however, the Undersigned noted that, "[b]y holding an evidentiary hearing, the Court is by no means stating that Petitioner is entitled to any relief under 28 U.S.C. § 2254(d). The Court simply wants to develop a full and complete

11

record." [DE 25 at 10]. Consequently, the case remained set for an evidentiary hearing on August 16, 2024. *See* DEs 25, 26, 28. And, the evidentiary hearing did proceed on August 16, 2024.

## IV.    THE AUGUST 16, 2024 EVIDENTIARY HEARING

At the beginning of the August 16, 2024 evidentiary hearing, the State yet again objected to the Court holding an evidentiary hearing, citing to *Landers v. Warden, Att. Gen. of Ala.*, 776 F.3d 1288 (11th Cir. 2015), and *Dean v. Warden*, No. 19-15112-E, 2020 WL 3551715 (11th Cir. Mar. 24, 2020). In this regard, the State reiterated its position that "before a habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state court record." *Landers*, 776 F.3d at 1295.

The State's position appeared to be that, because this Court did not make a finding that Petitioner demonstrated a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, an evidentiary hearing was improper. Indeed, the State noted that, in setting the August 16, 2024 evidentiary hearing, the Court "clarifie[d] that it [wa]s not deciding whether Petitioner's claim ha[d] any merit by merely holding an evidentiary hearing." [DE 25 at 9]. However, despite the State's reliance on this language and upon the Court's omission of an *explicit* finding that Petitioner demonstrated clearly established federal-law error or an unreasonable determination of fact on the part of the state court, the Court did not hold an evidentiary hearing on a whim. The Court felt it was necessary to hear the testimony of the relevant witnesses to the plea discussions, which included the Petitioner, his attorney, and the prosecutor.

In agreement with 4th DCA Judge Warner's urging of an evidentiary hearing in state court, the Undersigned determined that the record should be complete and clear so this Court could make a proper determination and avoid any potential of a miscarriage of justice. An evidentiary hearing was necessary to achieve that goal. And, under the unique and specific facts of this case, the Court set the evidentiary hearing because, in part, the Court *implicitly* found that Petitioner's claim arguably demonstrated an unreasonable determination of fact on the part of the state court through its failure to hold an evidentiary hearing that was very clearly not refuted by the record. The Undersigned intended to make this implicit finding explicit in any subsequent Report and Recommendation after the evidentiary hearing. The Court's holding of an evidentiary hearing in this case is also discretionary, and the Court determined to exercise its discretion to hold an evidentiary hearing. While the State repeatedly objected to an evidentiary hearing, the State's objections were unfounded. Further, the State should also be concerned whether or not justice is done in a case, rather than formalistically objecting to such a hearing in knee-jerk fashion.

In any event, through the testimony elicited at the hearing, and despite the State's unfounded, vociferous, and repeated objections to the evidentiary hearing taking place in the first instance, the evidentiary hearing actually *aided* the State's position and helped crystallize the Undersigned's determination that the Petition must be DENIED in its entirety. After hearing from the witnesses at the evidentiary hearing, the Court is quite firm in its determination that Petitioner is not entitled to any relief on his Petition.

Specifically, during the August 16, 2024 evidentiary hearing, the Court heard from three witnesses: 1) Petitioner Jermaine Smith; 2) former Assistant State Attorney Luisa Berti, Esq.; and 3) trial counsel Michael Dennis Walsh. Their testimony is briefly summarized as follows:[4]

**A.  Petitioner**

Petitioner's trial counsel was Michael Walsh, who was privately retained. Prior to trial, Petitioner was offered a five-year plea deal. However, Mr. Walsh informed Petitioner that he could get Petitioner something better or that Petitioner should proceed to trial. Petitioner therefore rejected the five-year plea deal offer because Mr. Walsh told Petitioner that he would be able to "explain away" the DNA evidence. In fact, when Petitioner asked Mr. Walsh if he should take the five-year plea deal, Mr. Walsh said no.

Petitioner proceeded to trial without taking the plea. At trial, while Petitioner knew of the existence of DNA evidence and a surveillance video generally, Petitioner had never seen the surveillance video footage. During trial, Prosecutor Luisa Berti, Esq. started utilizing this footage, comparing Petitioner's appearance to the individual in the surveillance video, including the fact that Petitioner was wearing two earrings in his left ear at the time of trial, and that the individual in the surveillance footage had two earrings in his left ear. Had Petitioner seen the surveillance video footage, he would not have gone to trial, and would definitely not have gone to trial with two earrings in his ear. In Petitioner's mind, Mr. Walsh did not even review the surveillance footage.

Petitioner regrets not taking the five-year plea deal. After Petitioner was found guilty and proceeded to sentencing, Petitioner asked for probation or house arrest. Petitioner was unaware he

---

[4] No transcript of the hearing is available at this time.

could ask for a five-year sentence and his trial counsel did not tell him what to ask for at sentencing. Thus, when the sentencing Judge informed Petitioner that he could sentence Petitioner anywhere from probation to thirty years in prison, Petitioner asked for probation or house arrest.

### B. Luisa Berti, Esq.

Ms. Berti is currently an Assistant United States Attorney for the Middle District of Pennsylvania. She previously worked as an Assistant State Attorney in Palm Beach County, having been the prosecutor of record in Petitioner's state court case. Ms. Berti tried a significant number of felony cases and tended to remember cases that proceeded to trial.

In this regard, Ms. Berti recalled offering a five-year plea deal to Destiny Fulwood, Esq., an Assistant Public Defender who represented Petitioner before Petitioner retained Mr. Walsh, and Ms. Berti recalled Petitioner rejecting that plea deal offer. However, Ms. Berti had no recollection of offering Mr. Walsh the same plea deal after he took over Petitioner's case. Moreover, Ms. Berti did not remember specifically when she revoked the five-year plea deal offer to Petitioner but knew that it was revoked prior to the start of trial. Ms. Berti did, however, remember Petitioner's counsel (whether it was Ms. Fulwood or Mr. Walsh) asking for a non-incarcerative plea deal, and Ms. Berti stated that Petitioner seemed wedded to the idea of not serving *any* type of incarcerative sentence.

Ms. Berti believed the case against Petitioner was good. However, she did not believe it was the strongest case she had ever worked on. Thus, the five-year plea deal offer to Ms. Fulwood was reflective of the possibility that the State could lose at trial. According to Ms. Berti, if Petitioner had accepted the plea deal, she would have honored it, but she would not have offered the plea deal after preparing for trial.

15

### C.  **Michael Dennis Walsh**

Mr. Walsh currently lives in Hawaii, and is suspended from the practice of law in Florida for matters unconnected to his representation of Petitioner in the underlying criminal case. Previously, Mr. Walsh had a Florida law practice and represented Petitioner both prior to trial, and during trial. Mr. Walsh has significant experience with criminal cases and has represented over 1000 criminal defendants throughout his career.

Mr. Walsh remembered representing Petitioner, stating that he represented around 12–15 other individuals around that same timeframe. Mr. Walsh could not recall the State making a plea deal offer that Petitioner was willing to accept, as Petitioner was unwilling to accept any jail time. According to Mr. Walsh, a seven-year plea deal may have been offered to Petitioner (though it could have been five years), but Petitioner "flatly" rejected the plea deal offer and made it clear that he was unwilling to accept incarceration and was in fact unwilling to propose a plea deal counter-offer.

Mr. Walsh discussed the risk of Petitioner going to trial and noted that he considered the trial judge—Circuit Court Judge John S. Kastrenakes—the toughest sentencing Judge. Indeed, Mr. Walsh recalled Judge Kastrenakes sentencing Petitioner to fifteen years, the maximum sentence that he remembered Petitioner facing. Further, Mr. Walsh attested that he discussed the evidence in the case with Petitioner prior to trial, including the DNA and surveillance video. While Mr. Walsh did not recall if Petitioner—who was out on bond pending trial—personally reviewed the surveillance video, Mr. Walsh stated that it was his practice to make copies of all discovery for clients and that he always provided his clients with all discovery and the opportunity to review it. Mr. Walsh testified that he provided all the discovery including the surveillance video to Petitioner

16

prior to trial and met with Petitioner in his office to discuss the case and the discovery. Further, Mr. Walsh recalled suggesting that Petitioner get a defense expert for the DNA evidence, but he stated that Petitioner told him that he did not have the money to do so; and, Petitioner did not qualify for indigent status to obtain an expert at State expense.

Notably, Mr. Walsh's troubles with the Florida Bar have occurred over the last two-and-a-half years, well after Petitioner's trial. Specifically, while Mr. Walsh noted the official reason for his suspension was failing to appear at certain hearings and failing to properly keep his clients apprised of their cases, he previously had a cocaine addiction that ultimately led to the conduct underlying his suspension.[5] Mr. Walsh had also taken a medical leave before, around 2012. However, Mr. Walsh clarified that he did not use cocaine at the time of Petitioner's trial, and he testified as to his ongoing efforts to get reinstated with the Florida Bar.

Mr. Walsh believed the State had a very strong case against Petitioner. He believed Ms. Berti would have honored any plea deal made to Petitioner.

### D.  Credibility Determinations

After observing the demeanor of the witnesses and hearing their testimony, the Undersigned finds both Mr. Walsh and Ms. Berti to be very credible witnesses. Specifically, the Court finds credible Mr. Walsh's testimony that he made all the discovery available to Petitioner prior to trial, that he fully discussed the case and the evidence with Petitioner, and that Petitioner would not agree to any plea offer that involved any jail or prison time. Additionally, the Court

---

[5] Mr. Walsh, to his credit, was very forthcoming during the evidentiary hearing and he readily acknowledged his prior addiction and faults. While Mr. Patti, counsel for the State, objected to the introduction of such testimony, Mr. Walsh was very open with his addiction and wanted to ensure that the testimony was elicited so that Petitioner received a fair hearing. The Court agrees with Mr. Walsh on this point. The Undersigned has considered Mr. Walsh's openness and candor as part of the Court's credibility determination.

finds credible Ms. Berti's testimony and finds it supportive of this Court's finding that Petitioner never would have accepted any plea offer that involved jail or prison time. The Court credits her testimony in making its findings in this case.

As to Petitioner Jermaine Smith, the Court does not find his testimony to be credible, as it is quite clear to the Undersigned that Petitioner was seeking to avoid any type of prison or jail sentence whatsoever during the plea negotiations and is now attempting to re-write the history of his case. That is, after hearing from the witnesses and assessing their credibility, the Undersigned finds that Petitioner adamantly refused to accept any plea that would result in any jail or prison time. Petitioner would only accept probation or house arrest, and that option was never offered to Petitioner. Further, the Court is quite concerned about the portion of Petitioner's testimony where he stated, in effect, that the person in the surveillance video wore two earrings in his ear, and that had Petitioner viewed the video in advance, he would not have worn the two earrings in his ear at trial. This testimony raises the specter that Petitioner would be willing to alter his appearance in an effort to avoid damaging evidence at trial.

## V.   <u>RELEVANT LAW</u>

Pursuant to 28 U.S.C. § 2254(d), an individual in state custody is entitled to federal habeas corpus relief only on the ground that he is in custody in violation of the United States Constitution or laws or treaties of the United States. To obtain habeas corpus relief from a federal court, a prisoner must demonstrate that the state court's ruling on the claim: 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

proceeding. 28 U.S.C. § 2254(d)(1)-(2); *see also Williams v. Taylor*, 529 U.S. 362, 405–06 (2000);

*Fugate v. Head*, 261 F.3d 1206, 1215–16 (11th Cir. 2001).

"A state-court decision is contrary to this Court's clearly established precedents if it applies

a rule that contradicts the governing law set forth in this Court's cases, or if it confronts a set of

facts that is materially indistinguishable from a decision of this Court but reaches a different

result." *Brown v. Payton*, 544 U.S. 133, 141 (2005); *Williams*, 529 U.S. at 405–06. "A state-court

decision involves an unreasonable application of this Court's clearly established precedents if the

state court applies such precedents to the facts in an objectively unreasonable manner." *Id.* In the

context of habeas petitions, "clearly established Federal law" refers to the holdings of the Supreme

Court's decisions as of the time of the relevant state court decision. *Hall v. Head*, 310 F.3d 683,

690 (11th Cir. 2002) (citing *Williams*, 529 U.S. at 412). Federal courts are required to presume the

correctness of the state court's factual findings unless the petitioner overcomes them by clear and

convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir.

2001).

The Supreme Court repeatedly has held that "[t]he petitioner carries the burden of proof"

and that the § 2254(d)(1) standard is a high hurdle to overcome. *See Bobby v. Dixon*, 565 U.S. 23,

24 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011)); *Cullen v. Pinholster*, 563

U.S. 170, 180 (2011). State court decisions must be given a strong presumption of deference even

when the state court adjudicates a petitioner's claim summarily. *See Harrington*, 562 U.S. at 96–

100; *Gill v. Mecusker*, 633 F.3d 1272, 1288 (11th Cir. 2011).

## VI.     ANALYSIS

As an initial matter, there is no dispute that Petitioner is in custody or that the Petition is timely under 28 U.S.C. § 2254(d)(1). *See* DE 12 at 12. As the same issue raised in the Petition was raised in the amended postconviction motion and the appeal of the denial of the amended postconviction motion, the issue is therefore exhausted. Therefore, the Court can proceed directly to the merits of the Petition.

The AEPDA, however, rather strictly limits the Court's review of "any claim that was adjudicated on the merits in State court proceedings[.]" 28 U.S.C. § 2254(d). This Court must determine only whether the state court's decision "involved an unreasonable application of[ ] clearly established federal law" or "was based on an unreasonable determination of the facts[.]" *Id.* Here, the last state court to adjudicate Petitioner's claim on the merits was the Fourth District Court of Appeal, which issued an unwritten opinion summarily affirming the state court (albeit with a written dissent). The Court is therefore required to perform a "'look-through' [of] the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). In this case, on March 24, 2022, the state court denied the amended postconviction motion. [DE 13-1 at 141–46]. Therefore, this Court must review the reasonableness of that state court order.

Petitioner's claim is based on his allegations that his counsel performed deficiently. "In *Strickland v. Washington,* 466 U.S. 668, 687 (1984), the Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. Under the 'performance' prong, the defendant must show that counsel's performance 'fell below an objective standard of reasonableness.'" *King v. U.S.*, 250 F. App'x. 930, 932 (11th Cir. 2007) (citing *Strickland*, 466

U.S. at 688). "Under the 'prejudice' prong, the defendant must show that counsel's deficient performance actually prejudiced the defendant and that, "but for the attorney's error, the outcome of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694). The burden of persuasion is on a petitioner to prove, by a preponderance of competent evidence, that counsel's performance was unreasonable. *See Strickland,* 466 U.S. at 688. The petitioner must establish that particular and identified acts or omissions of counsel "were outside the wide range of professionally competent assistance." *Chandler v. United States*, 218 F.3d 1305, 1313, 1314 (11th Cir. 2000) (quoting *Burger v. Kemp,* 483 U.S. 776, 794 (1987); *see also Strickland,* 466 U.S. at 686 (stating that petitioner must show "counsel's representation fell below an objective standard of reasonableness", which means that counsel's performance was unreasonable "under prevailing professional norms. . . considering all of the circumstances").

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. When assessing a lawyer's performance, "[c]ourts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." *Chandler,* 218 F.3d at 1314 (11th Cir. 2000). When assessing ineffective assistance of counsel claims, the court's role is not to "grade a lawyer's performance; instead, [the court] determine[s] only whether a lawyer's performance was within the wide range of professionally competent assistance." *Van Poyck v. Fla. Dep't of Corr.,* 290 F.3d 1318, 1322 (11th Cir. 2002) (quoting *Strickland,* 466 U.S. at 690) (internal quotation marks omitted).

"Intensive scrutiny and second-guessing of attorney performance are not permitted." *Spaziano v. Singletary*, 36 F.3d 1028, 1039 (11th Cir. 1994).

If a petitioner's claim of ineffectiveness turns on whether counsel should have raised issues of state law, § 2254(d) requires that the federal court defer to the state court's decision regarding its own laws. *See Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (superseded by statute on other grounds). It is "a fundamental principle [that] state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters." *See Herring v. Sec'y, Dept. of Corr.*, 397 F.3d 1338, 1354–55 (11th Cir. 2005) (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

Further, in the context of a plea deal in particular, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). Indeed,

> [t]hough the standard for counsel's performance is not determined solely by reference to codified standards of professional practice, these standards can be important guides. The American Bar Association recommends defense counsel "promptly communicate and explain to the defendant all plea offers made by the prosecuting attorney," ABA Standards for Criminal Justice, Pleas of Guilty 14–3.2(a) (3d ed. 1999), and this standard has been adopted by numerous state and federal courts over the last 30 years.

*Id.* at 145. To establish prejudice, Petitioner must "allege and prove a reasonable probability, defined as a probability sufficient to undermine confidence in the outcome, that (1) he or she would have accepted the offer had counsel advised the [Petitioner] correctly, (2) the prosecutor would not have withdrawn the offer, (3) the court would have accepted the offer, and (4) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Alcorn v. State*, 121 So. 3d 419, 430 (Fla. 2013).

Here, much of the Petition was based on Petitioner's claim of ineffective assistance of counsel not being conclusively refuted by the record. However now, with the benefit of a full and complete evidentiary hearing, the Undersigned finds that Petitioner's claim of ineffective assistance of counsel is conclusively refuted by the record. Specifically, as discussed above, the Undersigned finds Mr. Walsh and Ms. Berti to be quite credible (though their memories were at times understandably faulty due to the passage of time), and also finds Petitioner to not be credible.

In this regard, the Undersigned finds that—even assuming the five-year plea deal offer remained open to Mr. Walsh and, through extension, Petitioner—Mr. Walsh did not perform deficiently in his representation of Petitioner. It was Mr. Walsh's practice to provide all discovery to his clients, and Mr. Walsh attested that he provided the surveillance footage to Petitioner and that Petitioner knew of all the evidence against him. Indeed, the Undersigned notes Mr. Walsh's testimony that Petitioner was out on bond pretrial, which would have made it even easier for Petitioner to obtain and view the evidence against him. Petitioner was able to visit Mr. Walsh in his office and obtain and review all the discovery. The Undersigned finds that Mr. Walsh's representation was not ineffective; in fact, it was effective, competent, and proper. Mr. Walsh did his best with a strong State case and a client who refused to accept any plea involving jail or prison time. It is clear to this Court that Petitioner now regrets not taking the five-year plea offered to him as, after he lost at trial, the 15-year sentence was much higher than that which had been offered to him pretrial.

Further, Petitioner cannot establish prejudice under *Strickland*. To this end, Mr. Walsh and Ms. Berti were adamant that Petitioner rejected all plea offers and that Petitioner was not looking for any sort of incarcerative sentence, testimony which this Court credits. And as noted by the

23

State, at sentencing, Petitioner remained focused on receiving probation or house arrest rather than any sort of incarceration. It is clear to the Undersigned that Petitioner was laser focused on avoiding any jail or prison sentence. Because of this, Petitioner would have, and did, reject any sentence involving incarceration. His claims and testimony now are without merit.

Thus, following an evidentiary hearing, the Undersigned finds that Petitioner has not established a reasonable probability that he would have accepted any purported five-year plea deal offer. *See Alcorn*, 121 So. 3d at 430. Petitioner has not established prejudice.

Accordingly, Petitioner is unable to demonstrate either deficiency or prejudice under *Strickland*, and his ineffective assistance claim based upon trial counsel's purported failure to properly communicate the details and impact of a five-year plea deal is without merit. Therefore, Petitioner necessarily cannot establish that the state court's ruling: 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding (which this Court has expanded upon pursuant to an evidentiary hearing that was necessary in this case). *See* 28 U.S.C. § 2254(d)(1)-(2).

Thus, with the benefit of a full evidentiary hearing and a complete record—which the Court notes actually helps the State's argument and conclusively dispels of Petitioner's argument—the Undersigned finds and RECOMMENDS that Petitioner's Petition [DE 7] be DENIED.

## VII.   <u>CERTIFICATE OF APPEALABILITY</u>

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the

applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b) to the Rules Governing § 2254 Proceedings.

After a careful review of the record, the Court finds that Petitioner is not entitled to a certificate of appealability. "A certificate of appealability may [be] issued[d] . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To merit a certificate of appealability, Petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues she seeks to raise. *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *see also Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because the claim raised in the Petition is clearly without merit following the evidence elicited during the August 16, 2024 evidentiary hearing, Petitioner cannot satisfy the *Slack* test. Upon consideration of the record as a whole, the District Judge should deny a certificate of appealability.

### VIII.   RECOMMENDATION TO THE DISTRICT JUDGE

A very careful review of the entire record establishes that Petitioner's claim is meritless and due to be denied for the reasons stated above. The Petition fails to establish any grounds for relief. Accordingly, the undersigned United States Magistrate Judge **RECOMMENDS** that the United States District Judge **DENY** Petitioner's Petition [DE 7] and **DENY** a Certificate of Appealability.

**<u>NOTICE OF RIGHT TO OBJECT</u>**

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Donald M. Middlebrooks. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 19th day of August 2024.

WILLIAM MATTHEWMAN
United States Magistrate Judge